IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. B-05-431 |
| | § | |
| ALBERTO GARCIA-ESCUDERO | § | |

# MEMORANDUM OPINION AND ORDER

On November 30, 2005, subsequent to having been found mentally incompetent by two different medical providers, the Defendant appeared before United States Magistrate Judge John Wm. Black.  Pursuant to 18 U.S.C. § 4241(d), Judge Black ordered the Defendant be committed to the custody of the Attorney General of the United States.  More specifically, the Defendant was committed to the custody of the Mental Health Department of the Federal Medical Center located in Butner, North Carolina, for the purpose of restoring the Defendant's capacity to stand trial.  This treatment period was extended by a subsequent order of this Court.  Finally, the court granted the Government's motion for a hearing on its Motion for Judicial Authorization for Involuntary Anti-Psychotic Medication.  This order is being entered to memorialize the hearing and decision of this Court and to clarify the reasons therefor.

**I.     BACKGROUND**

On May 31, 2005, the Defendant was indicted for being an Alien Unlawfully Found in the United States Subsequent to Deportation and Following a Conviction for an Aggravated Felony pursuant to 8 U.S.C. §§ 1326(a)-(b).  However, due to the Defendant's inability to remain focused and provide basic information in support of the preparation of his defense, the Court ordered that the Defendant undergo a psychiatric evaluation to ensure his competency to enter the aforesaid plea.  The Defendant saw Dr. David Moron, a board certified psychiatrist, on June 13, 2005, and was found to be incompetent.  The Defendant was therefore dispatched to the Federal Medical Center in Fort Worth, Texas, for further evaluation.  On November 11, 2005, that center issued its report which also concluded that the defendant was suffering from a mental disease which rendered him incapable of assisting in his own defense.

It was the confirmation by the health care providers in Fort Worth that presumably led Judge Black to order the defendant transferred to the medical center for treatment. (In actuality, the order specified the institution at Springfield, Missouri; however, the defendant was actually treated in Butner, North Carolina, as opposed to Springfield.) The defendant underwent treatment at the Butner facility from mid-February to late April of 2006.

In an eighteen-page report signed on April 20, 2006, by Angela Walden Weaver, Ph.D., and psychiatrist Robert G. Lucking, M.D., the referenced medical personnel concluded that, "there is a substantial probability that Mr. Garcia-Escudero's competency can be restored with a period of treatment with [an antipsychotic medication]."[1] Accordingly, they recommended that the Court order a four-month period of involuntary confinement and treatment pursuant to 18 U.S.C. § 4241(d). In addition, they requested that the court grant them the authority to administer antipsychotic medication to the Defendant against his will, if need be, pursuant to the standards set forth in Sell v. United States, 123 S. Ct. 2174 (2003).

On August 15, 2006, the Defendant again appeared before this Court. During this hearing, no party questioned the findings reached by the medical personnel of the Federal Medical Center in their April 20, 2005 report. The Court queried whether the Defendant would voluntarily take antipsychotic medication while in the custody of the Federal Medical Center. The Defendant responded in the negative, and he generally seemed detached from reality. Throughout the hearing, the defendant seemed defeated and was very non-responsive in his lengthy rambling to the Court. While not all of his statements were incomprehensible (many were), those that were understandable were off topic and did not necessarily make sense.[2]

---

[1] Dr. Weaver has been a staff psychologist at the Federal Medical since 1995. She holds a B.A. from the University of Houston, a masters degree in clinical psychology from the University of Alabama as well as a doctoral degree from that same institution in psychology law. She then served an internship with the behavior medical clinics affiliated with the University of North Carolina. Dr. Lucking is a graduate of Hope College and medical school at Wayne State University. He did his residency in Michigan and Florida and became Board Certified in psychiatry in 1981. He began working with the Bureau of Prisons in 1995 and later came to the Butner facility in 1998 where he is a staff psychiatrist.

[2] The interchanges between both the Court (and the other individuals at the hearing) and the defendant were at best troublesome and at worst totally incomprehensible. Perhaps the problem is best illustrated by an example occurring right at the onset of the Court's conversation/questioning with the defendant.

>   **The Court:** Mr. Garcia, let me ask you, would you feel more comfortable if you spoke in Spanish and have the translator translate for you? Whichever way you feel more comfortable.

## II.   DISCUSSION

The Supreme Court has determined that courts may order involuntary medication of defendants for the purpose of restoring them to competency in certain instances. Sell, 123 S. Ct. at 2184. Given defendants' "constitutionally protected 'interest in avoiding involuntary administration of antipsychotic drugs,'" a Court must find multiple elements to be satisfied as a prerequisite to entering such an order. Id. at 2183-84 (quoting Riggins v. Nevada, 504 U.S. 127, 134 (1992)). However, the Court has also counseled lower courts to ensure as a threshold matter that there is no alternative rationale for ordering involuntary administration of medication (e.g., defendants' dangerousness—to themselves or others—or illness that puts defendants' health at extreme risk). Id. at 2183, 2185 (citing Washington v. Harper, 494 U.S. 210, 225-26 (1990)).

The evidence concerning a Harper rationale is somewhat inconclusive. The medical staff at Butner was sufficiently satisfied that Garcia-Escudero was not a danger to himself or others that they included this conclusion in their report to the Court. Nevertheless, their opinions are not binding on this Court when evidence to the contrary exists. In this very case, one of the predicate offenses which support the Government's claim that Garcia-Escudero's alleged illegal entry into the United States is a violation of 8 U.S.C. § 1306(b) is a robbery and involuntary manslaughter conviction. This conviction was the result of a murder trial in which a jury rendered the verdict, but, for some reason not clear from the evidence in the record, chose to find the defendant guilty of the lesser offense of involuntary manslaughter.

While robbery and manslaughter are clearly serious crimes and are evidence that might support findings under Harper, this Court is quite concerned about the paucity of actual information concerning these convictions. Given the lack of reliable evidence concerning the defendant and the

---

**The Defendant:** Well, I believe, you see, I had -- you see, I had -- I went -- (unintelligible) to the high school when I was a little baby, and -- you know what I'm saying? I had a -- I had to make a couple of wars down here. Did that every time I been switched up to people, a lot of people, they don't want to do activity, you know what I'm saying? So anyways, the place I go to say anything about trouble, and the street, that is different fights and different type of situation.

When I get -- and to some point to the people, you know what I'm saying, but they get to some place, you know what I'm saying, I can't get to nowhere. You know what I'm saying? But nothing but trouble. You see, I don't want to -- you see, I don't want to be --.

he remainder of his testimony was similar and it illustrated the very problems reported by his health care providers.

total lack of evidence that would link these crimes to Garcia-Escudero's mental problems, this Court does not feel that there are sufficient facts to outweigh the more recent treatment and professional judgments of Drs. Weaver and Lucking.

Nevertheless, this Court's conclusion as to the availability of Harper's criteria deems not change its conclusion that the Defendant qualifies for involuntary commitment and the involuntary administration of medication for the sole purpose of establishing his competency under the fourfold criteria enumerated in Sell.  Pursuant to the Court's opinion in that case, a court must find four elements in order to grant the Federal Medical Center the authority to administer antipsychotic medication against the Defendant's will:  (1) important government interests must be at stake; (2) involuntary medication must significantly further those interests; (3) involuntary medication must be necessary to further those interests; and (4) such treatment must be in a defendant's best medical interest.  Id. at 2184-85.  While not adamantly attacked, the first Sell prong is the only one that defendant seemed to actually contest.

The April 20, 2005 report properly forgoes any opinion on the first element, as it is strictly a legal matter.  The Supreme Court has indicated that, "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important." Id. at 2184.  Apart from noting that both offenses against persons and property may constitute "serious crime," the Court does not offer a definition of "serious crime."  However, another court has helpfully noted that, in another constitutional context, the Supreme Court has regarded "offenses for which a term of imprisonment exceeding six months may be imposed" as being serious.  United States v. Evans, 293 F. Supp. 2d 668, 673 (W.D. Va. 2003) (relying on Supreme Court case law concerning the Sixth Amendment right to a jury in criminal matters).  The statutory maximum in this case, 8 U.S.C. § 1326(b), is twenty years of incarceration, and arguments by counsel indicate that, under the unique circumstances of this case and under the applicable guidelines, the Defendant would be exposed to between thirty-seven to over seventy months of incarceration.  These facts certainly indicate to this Court that the instant offense is sufficiently serious such that the Government has an important interest in bringing the Defendant to trial.  While one could argue that illegal re-entry into this country is not a crime against a person or persons, this Court cannot agree with that analysis, at least in this case.  The defendant has not been a law-abiding person once in this country illegally.  He has committed robberies and burglaries (breaking and entering) and, as noted above, has had a hand in

killing at least one individual. While this Court could understand the theoretical argument in support of someone whose only crime has been returning to the United States illegally, that argument is much less persuasive when the individual has a long history of committing crimes against people and property once inside the borders of the United States. But see United States v. Barrajas-Torres, 2004 WL 158914 (W.D.Tex. 2004).

The last three of the four Sell elements are clearly satisfied for the reasons elaborated in the previously referenced April 20, 2006 Federal Medical Center report and the uncontroverted testimony given by both Dr. Lucking and Dr. Weaver at the hearing before the Court. As the report and their testimony speak for themselves in this regard and there was no objection to either, the court incorporates by reference and adopts its findings with respect to these three elements and deems these elements satisfied. No challenge was made to the findings, conclusions, and prognosis made by the doctors and no evidence to the contrary was introduced. A sealed copy of said report is attached to this order.

## III. CONCLUSION

For the foregoing reasons, the court reiterates its order of yesterday's date pursuant to 18 U.S.C. § 4241 that the Defendant is to be delivered to the Federal Medical Center in Butner, North Carolina as soon as practicable. The Defendant is to remain there until he is competent to stand trial, provided such period does not exceed four months.[3] At said facility, medical personnel are authorized to administer antipsychotic medication to the Defendant against his will for the purpose of medically treating and rendering him competent to stand trial, with the caveat that such treatment be discontinued if the Defendant suffers any major side-effects or if the medication becomes medically inadvisable or contraindicated; should these circumstances arise, the medical personnel are directed to cease administering the medication and report the incident to this Court, at which time the court will consider other legal alternatives. This order has purposefully not gone into detail into the defendant's medical condition because the testimony and report were uncontroverted and in order to protect the defendant's privacy. Nevertheless, since the report is attached, it is ordered

---

[3] The Court will consider reasonable extensions if medically necessary and if such extensions are legally justified.

sealed.  Appropriate personnel serving the United States Marshals Service and serving with the Federal Bureau of Prisons (especially at the Federal Medical Center in Butner, North Carolina) are exempted from this privacy consideration and shall be allowed to access this order.

Signed in Brownsville, Texas, this 16th day of August, 2006.

Andrew S. Hanen
United States District Judge